IRVINE, administrator, v. WITHERS.

1. Declaration on a note payable at a particular place, and no averment of special demand at such place; the defect if any is cured by verdict.
2. *Semble*, that such demand and special request, need not be proved or alleged, in an action against the real debtor.

IN the County Court of Lauderdale county, James Irvine, administrator of Hugh Hagerty, brought an action of debt on a note which was as follows: " On the first of January next, we or either of us, promise to pay to Hugh Hagerty, in New-Orleans, or bearer, to [at] the

house of Bedford and Mackey, seventy eight dollars and
twenty cents, value received, this 13th November, 1823.

R. O. BENNETT,      SEAL.

WM. F. WITHERS.     SEAL.

The defendant pleaded payment and *nil debet;* on
which issue was joined.

At the trial, the defendant objected to the reading of
the note without proof of a demand of payment in New-
Orleans, at the house of Bedford and Mackey; and also
requested the Court to charge the jury that they must
find for the defendant, unless plaintiff proved that such
demand was made in New-Orleans. The Court over-
ruled the objection, and refused the charge under the
issue joined in the cause. To those decisions of the
Court, the defendant tendered his bill of exceptions,
which was sealed. The jury found for the plaintiff.

The Court afterwards, on motion of the defendant, ar-
rested the judgement, on the ground that there was no
special averment in the declaration, of demand of pay-
ment of the note at the house of Bedford and Mackey, in
New-Orleans; and rendered judgement for costs against
the plaintiff.

COALTER, for the plaintiff, assigned in this Court for
causes of reversal,

1. That it was error to arrest the judgement, and ren-
der judgement for costs against the plaintiff. [a]

2. That it was error to arrest the judgement after
having decided the same point against the defendant, to
which opinion he had excepted, and on which exceptions
the defendant still relied [b]

3. That if the declaration as filed, was defective, the
defect was cured by the verdict on the defendant's pleas. [c]

CLAY, for the defendant in error.

This cause was argued at the last January term, and held
under advisement till this time, when the following opi-
nion was delivered

## By JUDGE SAFFOLD.

THE plaintiff contends that a demand was unneces-
sary in the suit against the *maker* of the note; or if ne-
cessary, that the defect has been cured by the verdict.

The question whether the maker of a promissory note,
or acceptor of a bill of exchange, being the original
debtors, are unconditionally liable, notwithstanding a

---

*Margin notes:*

JULY 1827,

Irvine
v.
Withers.

[a] 1 Wm. Bl 531,
17 John. 248,

[b] 1 Wm. Bl. 531.
1 Bacon Ab. 327,

[c] 1 Saund. 328,
228, 128. Note 1.
319. 7 D & E.
522. 1 Chit. Pl.
319, 402, 631. 5
Bac. Ab. 404.
Note. 3 Johnsons
Cas. 72. 3 John.
R. 202. 7 John.
R. 461.

place of payment has been designated, or whether a demand is to be regarded as a condition precedent, appears to have been extensively agitated; and have produced great contrariety of decision in the English Courts.

In the various discussions and decisions in those Courts, material distinctions have been maintained on these and analogous questions, between the liability of original debtors, and such as are collaterally, or secondarily responsible. Distinctions have also been urged, and in some instances allowed, between the situation in this respect, of such as are bound by designations contained in the *body* of the note or bill, and such as purport to be thus bound only by the terms of *acceptances* on bills.

The drawee of a bill has an unquestionable right to accept or refuse his acceptance; consequently he has the same authority that the maker of a note has to superadd qualifications or conditions to his promise, and the holder may receive or reject such acceptance. It is the acceptance only which creates the presumption of funds in the hands of the acceptor. A strict analogy is admitted to exist with regard to the order of responsibility between a negotiable promissory note, after endorsement, and an accepted bill of exchange; the maker of the one, and the acceptor of the other, (in ordinary cases,) are to be considered the real and primary debtors, generally and universally liable for their own proper debts. In either case, where no other place of payment is appointed, the law designates the residence or place of business of any such debtors, as the proper place of making payment, or any necessary demand; and notwithstanding the promise may be to pay on demand generally, it is held by all authority, and universally conceded, that such original debtor may be sued and held to bail at any place, without any previous demand or notice from the holder of the instrument, though it has been transferred to the hands of a stranger. In such case, moreover, I apprehend the debtor could not excuse himself from even cost or interest, by pleading and proving his readiness and willingness to pay at the proper time and place. If this be the law, I can not imagine that injustice or inconvenience would more frequently arise to primary debtors, where a particular place of payment is designated, under the rule that they shall be generally and universally liable,

with this qualification only, that. if sued previous to a
regular presentment made, they may by way of defence
shew, if the fact be so, that they were ready and willing
to pay at the time and place appointed,.and thereby avoid
costs and damages, and receive a discount sufficient to
remunerate them for any loss sustained in the difference
of exchange or otherwise, by reason of the failure to
make due presentment. Nor can I discover any suffi-
cient authority or reason, for the distinction which some
have insisted on, between the liability of acceptors of
bills and makers of notes; or as to .the effect of stipula-
tions respecting the place of payment, whether it be in-
serted in the body of the instruments, or only in the ac-
ceptance of bills.

In a recent case before the English House of Lords,
which is supposed to be analogous to the present, the
question as to the necessity of a demand on the principal
debtor, being deliberately considered, a decision was ren-
dered establishing the affirmative of the proposition.
This was a case of an accepted bill of exchange, contain-
ing a designation of a place of payment in the *acceptance*
only.  The acceptor was sued without any averment in
the declaration of a previous demand being made at
the place appointed for payment; a demurrer being filed
to the declaration, the Court of B. R. overruled the
same, holding the demand unnecessary. On a writ of
error in 1820, the House of Lords, having before them
the opinions, *seriatim*, of the twelve Judges, reversed
the judgement, holding that actual presentment, and an
averment to that effect, were essential to the plaintiff's
title to recover. *a*

Hence, if we are to yield with servile obedience to re-
cent decisions in England, it will be found that, after a
long and obstinate contest between the Courts of *Kings
Bench* and *Common Pleas*, the principles contended for
by the latter, and as above stated, have prevailed by the
weight of the House of Lords. Yet I think it will appear,
on a careful examination of all the *English* decisions,
that a majority of the professional Judges have held the
contrary doctrine. By the decision of the House of
Lords alluded to. the opinion of a large majority of the
twelve Judges was overruled, and which had been re-
quested and given, it would appear, on the most delibe-
rate consideration in that particular case. The Lords

JULY 1827.

Irvine
v.
Withers.

*a* Rowe v. Young
2 Brodrip and
Bingham 165.
6 Sergeant and
Lowber 53.

were so influenced, I conclude, by the opinions and arguments of Lord Chancellor Eldon and Lord Redesdale, when, as I conceive the weight of the names as well as strength of argument was decidedly in the opposite scale. Without entering into a particular examination of the numerous adjudications involving the principle, and which could only be a repetition of what has been said by the Judges in the case alluded to, and in one in the Supreme Court of New-York, in 1819, I venture to assume the position that a majority of the English Judges of *professional eminence*, have held the opinion, that in a proceeding against the principal debtor, (notwithstanding a place of payment is designated in either the body of the instrument, or the acceptance of a bill,) an averment of presentation is unnecessary ; that if such debtor has funds provided for the payment at the appointed place, he can, if sued, by bringing the money into Court and pleading his readiness and willingness to have paid at the proper time and place, and proving the same, make successful defence against the damages and costs of suit; and also avail himself in like manner, of indemnity for any injury sustained by reason of the difference of exchange, &c. at the place designated, and that at which he may be required to pay.    In support of this latter doctrine, (among others,) may I think, be found the names of *Ellenborough, Kenyon, Grose, Mansfield,* and of the twelve Judges in the recent case mentioned, *Best, Richardson, Garrow, Holroyd, Bayley, Graham, Richards* and Chief Justice *Abbott,* eight in number.    Some of these Judges extend the principle much further, and maintain that acceptors of bills and makers of notes, even where a place of payment is expressed, are generally and universally liable, without any restrictions or qualifications ; that place of payment is in no respect material, except with reference to drawers and endorsers, who are only collaterally responsible ; whose liability is contingent, depending on the use of due diligence by the holder to get payment from the principal debtor.    It may be true that some of those Judges have since yielded part of the doctrine.

But it is not alone from the number or weight of names that my opinion is formed.    I think sufficient contrariety of opinion has existed in the English Courts to leave the question entirely open with us for free and rational consideration, and that the reason and arguments which

have and may be offered against the necessity of the de-
mand greatly preponderate. That the acknowledged
principle alone, that if the demand is to be regarded as a
condition precedent, the failure to make it at the proper
time and place, whether from negligence, mistake, casu-
alty or whatever misfortune, must create a forfeiture of
the debt, is of itself hostile to the common analogies of
law, equity and justice, and conclusive against the doc-
trine. Where the question can be viewed as between
persons of equal merit, one of which must lose the
amount of the debt, as in the case of payee or endorsee
against drawer or endorsers ; and in proceedings against
securities merely, no solid objection can exist against the
exercise of rigid principles of decision ; but such rules
should not be applied in aid of the machinations or arti-
fice of principal debtors, to screen them from their own
proper original debts. I would calculate that in nine-
tenths of the contracts for payment of money at a particu-
lar place, the difference to the debtor as respects the
place is but nominal ; that in a still greater proportion,
such designations of place are made for the benefit of the
creditor, or the mutual convenience of both parties ; and
that it would be next to a miracle to find a creditor who
would institute a suit at the risk of incurring the cost,
losing the interest, and being delayed in the collection, in
preference to making the demand at the place appointed,
unless he had ascertained that the application would be
fruitless. If this calculation be correct, the objection to
requiring the averment and proof of the demand, is well
founded in the argument *ab inconvenienti*. Because it
would induce the necessity of making proof in all such
cases, and procuring the evidence frequently from a con-
siderable distance; sometimes from the place designated
for payment to distant quarters of the globe, to which
debtors have fled, in order to evade the payment; and
when too, from common observation and the nature of
commerce, the evidence would not be essential to the
justice of perhaps, one case in fifty ; and in these rare
cases, I think it is shewn that ample justice can be other-
wise done. These views of the subject are to my mind,
more convincing than the contrary arguments on which
the recent English decision rests ; the most prominent of
which are, that if the demand can be dispensed with, any
persons, even the twelve Judges of England, and a gen-

JULY 1827.

Irvine
v.
Withers.

tleman from *Calcutta*, after accepting bills payable at their bankers, and depositing the funds there to meet them, should they travel to a distance, may there be arrested, and found unprepared to pay, and be subjected to various losses and great inconvenience. If under such circumstances, the money could be immediately extorted from the worthy debtor, without inconvenience, cost to the plaintiff or loss of interest, whereby any considerable inducement would be afforded to the indulgence of such iniquity or vexation, I might concur, in order to prevent it, in the propriety of encountering all the inconvenience, expenditures and dangers to which I have alluded, as likely to arise under the doctrine to which I dissent.

In the decision referred to in the Supreme Court of New-York, in the case of Wolcott against Van Santvoord, [a] which was an action by the *payee* against the *acceptor* of a bill of exchange, *drawn payable at a particular place*, the question was presented on demurrer to the declaration, for the omission of an averment, that the bill had been presented at the place for payment. The doctrine was examined at considerable length by Chief Justice Spencer, who delivered the opinion of a majority of the Court, and by Judge Van Ness, who expressed a dissenting opinion. The decision in that case was, on a full review of the authorities, that presentment was not a condition precedent to the plaintiff's right of action; that in such case the time and place of payment is merely *modal*, forming no essential part of the contract; that it is incumbent on the defendant, whether the payee was at the place at the time of payment or not, to shew, in his defence that he was there ready and willing to pay, and that the payee did not come, &c.; that the consequence of the absence of the payee under such circumstances, unless he make a subsequent special demand, and there be then a refusal, are merely, that he must be content with receiving the sum originally payable, and be himself liable for the cost.

According to my conception, this opinion stands on the most solid basis. Among other arguments advanced in it, is one which has often been used in support of the principle, and to which I have before adverted, that if presentment be a condition precedent to the liability of the acceptor, it must be emphatically so, as regards the drawer; and the result would be, that a failure to present

[a] 17 John. R. 248.

at the time, or at the place, would occasion a total loss of the debt; for if it cannot be recovered in an action on the bill, in consequence of an omission to aver a presentation at the time and place, no other form of action will lie where that proof cannot be made." Chief Justice Spencer, in the same opinion, used another argument in support of it, which appears to me unanswerable; which is, that "the nonattendance of the holder of a bill, at the time and place of payment, can produce no worse consequences to him than if he had attended, and the acceptor had also been present, and tendered the money which the holder had refused to accept;" and he adds, "under such a state of facts, what is the legal consequence? It is perfectly well settled that when a debt or duty exists, such as the payment of a sum of money, a tender of the money, though it be refused, does not extinguish the debt or duty; but it remains obligatory on the party owing the debt or duty."

The dissenting opinion of Judge Van Ness in that case, contains little more than a passive acquiescence in what he conceived to be the current of decision in *Westminster Hall*, and a reference to the English adjudications on the question. He appears, however, to have assumed the fact, that the necessity of presentment had been more generally acquiesced in by the Judges of England than is shewn to be true from the opinion of the Judges as given in the late case before the House of Lords, to which I have already referred. He employs one argument, drawn from his own resources, to which he thinks no satisfactory answer has or can be given. It is, as I understand it, that in order to charge an endorser of a note or bill, made payable at a particular place, a demand at such place is indispensably necessary; that this necessity is not created or imposed on the holder by the terms of the endorsement, but by the terms of the note or bill, and hence he concludes that a demand is no less necessary to charge the *maker* or *acceptor* than the *endorser;* that giving notice to an endorser of the dishonor of negotiable paper, for the purpose of making him answerable, is a condition in law applicable to the endorser only; but that the designation of a place of payment, by the parties themselves, constitutes a condition *in fact*, and is applicable to *all the parties* to the paper, and each one may have advantage of it.

In order to test the validity of this distinction between

31

the supposed conditions in *fact* and in *law*, it is necessary to inquire whether the distinction can be sustained on the principles of legal reasoning; whether there is the same policy and justice in discharging a principal debtor, on the ground of a failure by the holder of a note to present it for payment at the time and place appointed, that there is for exonerating a security, for the reason that due diligence has not been used to get the money from the principal. This is the simple question when fairly stated, and it furnishes its own answer. Drawers of bills after acceptance, and endorsers of either notes or bills, are but collaterally responsible. The acceptor of the one, and the maker of the other, have, according to the real *fact* in most cases, and in legal presumption *in all*, received the original consideration for which the paper was given : if the money is not collected from them, it must fall as a clear loss on some one. Any failure to demand payment at the time and place mentioned, tends to increase the responsibility of the drawer or endorser, by rendering payment by the principal less certain. Rules for the government of commerce must be strict and uniform for the security of innocent persons. Principles governing the liability of collateral debtors, who are virtually securities, should be established and understood. If, by the neglect of the holder of a note or bill to use due diligence in collecting the money of the principal debtor, the security be discharged, and the principal prove insolvent, the loss is only transferred from one to another, who is presumed to be less *meritorious*, as his negligence may have contributed to produce it.

But is there the same reason for exonerating the principal for a failure to demand payment at the place mentioned, when, if he has provided the funds at the time and place, he may avail himself of it as matter of defence against damages and costs, and satisfy the debt (which is at all times his own,) with the same amount of money ? Had this distinction obtained between conditions in law and in fact, the practice of instituting suits on notes, payable *on demand*, without presentment, could never have prevailed. I understand the law on these and analogous points, to rest on the general principle, that absolute debtors shall not be discharged on legal quibbles, and that creditors have no inducement to sue when they can make prompt collection without.

In a late case of the United States' Bank against Smith, <sup>a</sup>

* 11 Wheat. 172.

JULY 1827.

Irvine
v.
Withers.

the supreme tribunal of the United States has clearly intimated its opinion on this question. The suit was by the endorsee against the endorser of a note, drawn payable at the Bank of the United States, in the City of Washington. The objection to the declaration was that it did not contain an averment that a demand of payment of the maker of the note was made where it was made payable. Judge Thompson, in delivering the opinion of the Court, said, "whether, where the suit is against the *maker* of a promissory note, or the *acceptor* of a bill of exchange, payable at a particular place, it is necessary to aver a demand of payment at such place, and upon the trial to prove such demands, was a question on which conflicting opinions had been entertained, in the Courts of *Westminster Hall.* And after noticing the opinion in the late case, to which I have referred, of Rowe against Young in the House of Lords. and the contrary opinion reported in the fourth and seventeenth volumes of Johnson's Reports, [a] he remarked that this question did not necessarily arise in the case then before the Court, and they did not mean to be understood as expressing any decided opinion upon it, although they were *strongly inclined to think* that, as against the *maker* or *acceptor* of such note or bill, no averment or proof of demand of payment at the place designated, was necessary. But when recourse is had to the endorser of a note, very different considerations arise ; he is not the *original* and *real* debtor, but only surety. That case, though materially different from the present, required a full investigation of the doctrine of liability, and after it had, as we may suppose, received due consideration, no doubt can exist, as to what would have been the decision of that Court, had the question been directly involved.

[a] 4 John. 183.
17 John. 248.]

Hence, I entertain the confident opinion that, where the suit is against the original and principal debtor, no averment or proof of a demand is necessary to sustain the action.

On this point, however, some of the Judges necessary to constitute the majority, are not fully satisfied, and decline giving any opinion upon it. But Judge White concurs throughout in the opinion I have expressed. On the other ground relied upon by the defendant in error, a majority concur, and decide that the verdict cured the defect in the declaration if any existed. Therefore, the judgement below is reversed, and judgement rendered for the plaintiff in this Court.