## MONTGOMERY v. TUTT et als.

| 11 | 307 |
| 86 | 564 |

| 11 | 307 |
| 116 | 545 |

An acknowledgment of service of summons is only sufficient when reduced to writing and subscribed by the party. A verbal acknowledgment is not sufficient.

The general rule of Courts of Equity in foreclosure suits is, that all persons materially interested should be made parties, in order that complete justice may be done and multiplicity of suits avoided.

It is not, however, absolutely essential in all cases to make subsequent incumbrancers, prior to suit of foreclosure, parties to the suit. If not so made, they are not bound by the decree; but they are not necessary parties to a decree as between the mortgagor and mortgagee; and in many cases where the value of the property is less than the mortgage, it may be unimportant to the mortgagee to make them parties, and it would be a great hardship to compel him to make them so.

Their equity of redemption from the foreclosure, if not made parties, continues, and this they can assert at any time within the period allowed by the statute of Limitations.

The equity of redemption of a subsequent incumbrancer who has been made a party and had his day in Court, is by the decree taken away, leaving only the statutory right.

In an action of foreclosure of mortgage, when there are several subsequent incumbrancers, who have been duly served with process and suffered default, and one who was not served, and when it appears that the property has been sold under the decree for a sum less than the amount due upon the mortgage, and no question as to the regularity or fairness of the sale is made, the defendants so served are not in the position to complain that their co-defendant was not properly served.

In an action against the maker of a note or the acceptor of a bill of exchange, in which the place of payment is fixed, it is not necessary to aver presentment at that place and refusal to pay.

The failure to make presentment at the place named would not discharge the debt, but could only be pleaded in defense as to the question of costs and damages.

Wild et al v. Van Valkenburgh (7 Cal. 166) overruled.

APPEAL from the District Court of the Fifteenth Judicial District, County of Colusa.

This was a suit to foreclose a mortgage executed by the defendant, Tutt, upon certain premises situated in Colusa County, to secure the payment of his promissory note to the plaintiff. The note bears date on the fourth of February, 1856, and is for the sum of $6,900, payable to the plaintiff or order, one year from the seventh of March, 1856, at the banking house of D. O. Mills & Co., at Sacramento city, with interest at the rate of three per cent. a month, to be paid at its maturity, with four hundred and twenty dollars for the use of the interest in the meantime. The mortgage bears the same date, and was duly acknowledged and recorded. The complaint sets forth the note and mortgage, and alleges the maturity and non-payment of the

Montgomery v. Tutt.

note, and the non-payment of any interest thereon, and that since the execution of the mortgage the defendants, Wilson, Jordan, Middlemass and Page, adminstrators of the estate of Coonce, "have acquired, or claim to have acquired, some interest in the premises," and are therefore made parties; and concludes with a prayer for a personal judgment against the defendant, Tutt, and for the foreclosure of the mortgage and sale of the mortgaged premises, and execution against his property for any balance of the judgment remaining unsatisfied out of the proceeds; and for general relief.

The defendants, Tutt, Jordan, Wilson and Page were personally served with summons; and the Sheriff's certificate states that service was made on the defendant Middlemass " by an acknowledgment from him." Page demurred to the complaint, and his demurrer being sustained, the suit was discontinued as to him. The default of the other defendants was taken, and a personal judgment rendered against the defendant Tutt for the sum of $12,339.27, with a decree directing a sale of the mortgaged premises, the application of the proceeds to the satisfaction of the judgment, the surplus to go to the mortgagor, and execution to issue for any deficiency, and adjudging that the defendants be barred and foreclosed of all equity of redemption in the premises from and after the delivery of the deed to the purchaser at the sale.

From this judgment and decree the appeal is taken. Pending the appeal, the defendant Tutt has filed a release of errors. The other defendants assign as errors, 1st. The want of proof of service of summons on the defendant Middlemass; 2d. Want of entry of the default of the defendants; 3d. Excess in the personal judgment against defendant Tutt, and its rendition without proof of the amount due; 4th. The foreclosure of their equity of redemption; and 5th. Want of any averment in the complaint of a presentation of the note for payment at the banking house in the City of Sacramento, where, by its terms, it is made payable.

*P. L. Edwards & L. Sanders, jr.*, for Appellants.

All of the appellants were necessary parties. The complaint directly avers their interest in the subject of the controversy; and the "general rule is, that for the purpose of effecting an equitable adjustment among

all persons interested in the mortgaged property, *all parties in interest* shall be made also parties to the suit.    *    *    When all parties in interest are before the Court, the decree will be made such as to satisfy all their mutual and respective equities." 2 Hilliard on Mortgages, 110.    To the same in effect, but more *in extenso,* is 1 Daniell's Chan. 240.    The former authority is among the latest, if not the latest, upon the subject.

It is, however, insisted for the respondent, that the authorities are very conflicting upon the point, and *of course,* that their weight preponderates in his favor.    From a careful examination of the collation cited in Story's Equity Pleadings, section 193, and the notes appended, we have been *forced* to a different conclusion.    In fact, it would appear that Justice Story conceived his first doubts in view of Mr. Calvert's authority.

It will also be observed that Mr. Calvert's views were only expressed in regard to questions arising between an elder and younger mortgagor, and can have no direct application to other cases.    Here it is not averred that the appellants are mortgagees, and it is to be taken most strongly against the pleader.    They are to be taken not as mortgagees, and in fact, were not.    But even regarding them as such, the case is not within the purview of any of the authorities cited.    There may be, and are, cases in which a subsequent mortgagee is not a necessary party; and there may be, and are, cases in which, from the existence of particular facts, he is an *essential* party.

Regarding the appellants as severally holding younger mortgages, whether they are of equal or diverse execution and effect, justice cannot be dispensed without having all in Court.    Each has the right of redemption, and is subject to contribute towards the redemption of the whole, according to the equities of all.    *A fortiori,* it is palpably inequitable to bring in some of such younger mortgagees, and leave others out, so as to throw the whole burden upon the former.

In Daniell's Chan. 261, it is said, that " The mortgagee is entitled to insist that the whole mortgaged estate be redeemed together; and for the purpose that all the persons interested in the several estates or mortgages should be made parties to a bill seeking an account or

Montgomery v. Tutt.

redemption." And he adds, that the owner of a part of an estate mortgaged for the same sum must bring in the owner of the remainder.

In a late case, Vice Chancellor Bruce held that even subsequent judgment creditors are necessary parties. Cited in 2 Hilliard on Mortgages, 115, 116.

So, if the right of redemption, as in this case, become " severed after the mortgage," all must be made parties. *Ibid*, 118.

So it is irregular to proceed against one alone for a foreclosure, when another is in possession under his claim ; and here such possession is averred. *Ibid*, 119.

We think it unnecessary to encumber this argument with citations of other authorities. We believe that a plain and common sense application of these elementary propositions will unmistakably take this case without the range of those cited for the respondent.

The New York cases of Cox *v.* Wheeler and Andrews *v.* Wolcott, cited by the counsel, have no application. In neither were the facts even remotely like these. The first was the case of foreclosure *in pais*, under the statute of that State. In both the mortgages had been given to secure debts to become due by instalments. Sales had been made to enforce payment of the first instalments ; and the principal question was whether the purchasers took subject to the incumbrances for the secured instalments, or relieved therefrom. In neither is the question of parties mentioned otherwise than incidentally, and the head notes give no intimation that such a question was before the Court.

It is said that Middlemass is not prejudiced ; for the decree is void as against him for the want of service of process. We reply, that he is prejudiced. He had a right to be in Court, and to be there by regular process. He cannot rightfully be subjected to the costs of that and of this Court. If any decree at all was taken, he had a right to exact an adjustment of all equities between himself and all the others, and that none should be taken which did not adjust such equities.

All Courts, and specially those of equity, aid in bringing litigation to an end, and are averse to the unnecessary creation of costs. It is said that the other appellants are not prejudiced, for they had both the equitable and statutory right to redeem. We reply, all the considerations applied to Middlemass ; and further, we insist that they were

prejudiced by a decree which was null as against Middlemass, which determined their right of redemption, and failed to adjust any of the equities between him and themselves.

This case does not stand as if the respondent had sued the mortgagor alone. He sued all, and averred the interest of all in the property. They had a right to expect and demand that he should proceed regularly against all; that they should not be bound by the decree, unless all the interested of all were bound. There is a marked difference between a case which omits the mention of other parties or the statement of facts showing that others are interested, and one in which the bill itself charges the interests and parties.

*Robinson, Beatty & Heacock* for Respondents.

That as to the first assignment of error, we admit that there was no sufficient service of process on the defendant, Middlemass, and as to him, the said decree must be reversed or reframed. Whether the reversal of the decree as to Middlemass will affect the validity of the decree as to the other defendants, depends on several propositions, which we will proceed to discuss.

The first of these propositions is, whether subsequent incumbrancers are *necessary parties* to a bill of foreclosure, or only *proper* parties?

On the first proposition, we admit the authorities are conflicting.

Many of the books say, all subsequent incumbrancers are *necessary* parties. A much larger number says, they are not necessary but *convenient* parties. The authorities are collated by Story in his work on Equity Pleading, section 193, and the notes thereto. Story, in his last note to this section, (fifth edition of the work) quotes approvingly from Mr. Calvert's work on Parties in Equity. Calvert concludes from a review of all the authorities, that subsequent mortgagees are *not* necessary parties. It must be admitted that it has been the almost universal practice in this State, not to make subsequent mortgagees parties. There is certainly no adjudication in this State determining that they are necessary. If the Court were now to render such a decision, it would disturb a large amount of property, and no beneficial result would be attained.

But if we examine those authorities which say they are necessary

parties, we will find that term needs qualification. Some of the cases go to this extent, that the Chancellor, if he discovers from the pleadings that there are subsequent incumbrancers who are not parties to the suit, will order them to be brought in, and will refuse to proceed with the case until they are made parties. These cases are quoted to show that subsequent incumbrancers are *necessary* parties. But it may well be, that the same Court which would, before decree, require the parties to be brought in, would not reverse the decree nor set it aside after it had been rendered and a sale made under it. We apprehend that few, if any, cases can be found, which have gone this length ; and if any have gone to this length, it is because the decree has been so drawn that it might be dangerous in its operation to the party or parties not before the Court.

In this case we propose to show that no injury could accrue to Middlemass, by letting the decree stand as to the other defendants.

In Cox *v.* Wheeler, 7th Paige's Rep., page 250, Vice Chancellor Denio, in giving his opinion, says : " The purchaser would acquire by the sale all the title which the mortgagor had at the time of the execution of the mortgage, discharged from the incumbrance of the mortgage ; or in other words, the purchaser would acquire the whole estate and interest of the mortgagor and of the mortgagee."

The Chancellor and other Vice Chancellors seem to have concurred in this view.

In 16th Barbour's Rep., page 25, in the case of Andrews *v.* Wolcott, Gridley, J., says : " It is a mistake to say that the purchaser only takes the title of the mortgagor. He takes the title of both the mortgagor and mortgagee united. If there be any covenants, they run with the land and become vested with the purchaser at the mortgage sale, and he may maintain an action upon them."

Then it appears to us that the effect of a sale under this decree would be the same as to title, whether any of the defendants except Tutt were or were not before the Court. It would pass all the title which either Tutt or Montgomery had the day the mortgage was executed, and nothing more. As to the other defendants except Middlemass, they, having been served with process, would be barred the equity of redemption, unless they should come in within the statutory

time and redeem. In regard to Middlemass, he would stand on the same footing as if he had not been made a party. He would be allowed the statutory time to redeem, after being brought properly before the Court.

The next question is, can the decree in its present form (it being corrected, so far as it bars the right of redemption of Middlemass) injure Middlemass ? If the purchaser under that decree either brings ejectment, or asks the Court leave to sue out a writ of assistance against Middlemass, if he has or claims a title distinct from and superior to that of Montgomery and Tutt, he can defend under it. He is not barred or estopped by the decree. If he acknowledges holding under the mortgagor or mortgagee, he can, if it is attempted to turn him out, file his bill to redeem and ask a stay of proceedings; and the Court would allow him to redeem, even giving him time within the statutory limit of six months, on a proper showing.

As to the other defendants who have been served, they admit the truth of the allegations in the bill. They hold, as their silence admits, in subordination to the mortgage title. All the interest they can have in this litigation arises from their right to redeem. They have been brought before the Court and notified of what is being done. They have two methods of redeeming. One is, to come into Court with the money, make the redemption under the supervision of the Court, and pray for a proper decree fixing their respective rights. Or failing to do this, they may make the statutory redemption at any time within six months after the sale. Failing to answer, they waived their right to pay into Court. The statutory redemption is a thing done without the interposition of the Court, and the fact as to whether or not Middlemass was before the Court, could neither aid nor hinder the other defendants in exercising their rights.

The next assignment of error is, that no default was taken against the defendants. To this we have two answers.

1st. There was a default taken : and

2d. It would make no difference if there was no default.

The entering of a default is only to take away the right of filing an answer, which can be done at any time before the default is taken

20

or judgment rendered.   No answer was filed before the signing of the decree.   That would be as good as if forty defaults were taken.

FIELD, J., after stating the facts, delivered the opinion of the Court —BALDWIN, J., concurring.

The first assignment of errors is well taken.   An acknowledgment of service is only sufficient when reduced to writing and subscribed by the party.   (Prac. Act, sec. 33.)   A verbal acknowledgment to the Sheriff will not suffice.   The decree is, therefore, invalid as against Middlemass.   Over him the Court never acquired jurisdiction.   So far as he is concerned the decree must be reversed.   This disposition of the case as to Middlemass raises the inquiry, how far the reversal as to him can affect the decree as to the other defendants; and this involves a consideration of the question whether he was an indispensable party to the foreclosure.   It does not appear what was the nature of the interest he possessed or asserted in the mortgaged premises, whether that of subsequent purchaser or incumbrancer.   The complaint simply alleges that he and the other defendants, since the execution of the mortgage, have acquired, or claim to have acquired, some interest in the premises.   The brief of counsel speaks of him as a subsequent incumbrancer, and we will assume this to be the fact in the consideration of the case.

The general rule of Courts of Equity is, that all persons materially interested in the subject matter of the suit ought to be made parties, in order that complete justice may be done, and a multiplicity of suits avoided; and this requires subsequent incumbrancers, existing at the filing of the bill, to be made parties in a suit for a foreclosure of a mortgage.   They are interested in the property, and unless made parties, their rights will not be affected by the decree; and to this extent they are necessary parties.   This is the view taken by this Court in Whitney v. Higgins, 10 Cal. R. 547.   The purchaser, under the decree, takes a title only as against the parties to the suit; and that it may possess stability and security, all persons interested in the estate, at the time suit is instituted, whether purchasers, heirs, devisees, remaindermen, reversioners, or incumbrancers, should be

made parties. And it is the general practice, when it appears before decree that there are such persons not made parties, for the Court to order the case to stand over until they are brought in; but the practice is not imperative. It was remarked long ago, by Lord Avanley, in the Bishop of Winchester v. Beavor, (3 Ves. 317) that it was the usual and common practice, almost without exception, to make all incumbrancers parties; but he hoped the Court was not " *bound to insist upon all incumbrancers being parties.*" It is true, the language of many of the adjudged cases would seem to indicate that subsequent. incumbrancers are necessary, in the sense that they are indispensable parties; but, as is justly observed by Mr. Justice Story, " perhaps the solicitude of Courts of Equity to make a final settlement of the rights of all persons interested in such a suit, has carried them to an extent scarcely justifiable in point of principle or convenience." (Story's Equity Plead., sec. 193, note 2.)

The cases are not easily reconcilable. That subsequent incumbrancers are proper parties is clear; that they are necessary parties to a complete adjustment of all interests in the property is equally clear; that the Chancellor would be justified in ordering them to be brought in when not made parties, is also clear; but we do not think they are in all cases indispensable parties to a decree determining the rights of the parties before the Court as between themselves. The property mortgaged may be insufficient to cover the debt secured; the incumbrancers may be so numerous and their claims so large, that the parties possessing the latest liens could, by no possibility, receive any portion of the proceeds of the sale. It would be not only a great inconvenience, but a great hardship, to compel the mortgagee in such case to bring in all such persons who have acquired, without any fault of his, liens upon the property. As the foreclosure suit is prosecuted for his benefit, the expenses of making the subsequent incumbrancers parties must fall upon the estate, and in instances within our experience would have exhausted its entire proceeds. We do not think, then, that subsequent incumbrancers are indispensable parties. If not made parties, their rights cannot be affected; they are not bound by the decree; their equity of redemption from the purchaser continues, and this they can assert at any time within the period allowed by the

statute of limitations.    (Whitney v. Higgins, 10 Cal. 547 ; Haines v. Beach, 3 Johns. Ch. 459 ; Ensworth v. Lambert et al., 4 Johns. Ch. 605.)

It appears from the allegations of the complaint, which are to be taken as confessed by the defendants who were properly served and suffered default, that the plaintiff sold the property in controversy to Tutt, and took at the time the mortgage in suit as security for the purchase money, and that the interests of the other defendants were acquired subsequently.   It appears also that the property has been sold under the decree for a sum less than the amount due upon the mortgage, and no question as to the regularity or fairness of the sale is made.    Those defendants are not, therefore, in a position to complain that their co-defendant was not properly served with process.   They set up no defense under or in connection with him to defeat the decree, or lessen the amount found due on the mortgage ; and the decree does not undertake to determine any rights as between the defendants.

The next assignment of errors is the want of any entry of the default of the defendants.    To this there are two conclusive answers. 1st.  That the default was entered, and the counsel of the appellant is mistaken in his statement ; and 2d.  It would be of no consequence if it had not been entered.   The entry of the default only cuts off the right to answer, and this is as effectually done by the decree.

There is an excess of two hundred and twenty-three dollars in the amount of the personal judgment against defendant, Tutt.    The error arose from allowing interest at the rate of ten per cent. a year upon the amount of interest due at the maturity of the note.    Interest upon interest already due cannot be allowed, except in pursuance of a written engagement of the parties.   (Act to reg. Int., Wood's Dig. 551.)   The interest upon the note should have been calculated at the rate of three per cent. a month from its date to the date of the entry of the decree, and then added to the principal.    The amount thus found due, added to the four hundred and twenty dollars, with interest at ten per cent. a year from the maturity of the note, would have made up the true amount for which judgment should have been rendered.   The error is not one, however, of which the defendants can take advantage.   The defendant, Tutt, has released all errors.    The

defendant, Middlemass, is not bound by the judgment ; and in case he should seek to enforce his equity of redemption, the true amount to be paid by him can then be ascertained.    The other defendants have lost their right of redemption.    Their statutory right is gone from the lapse of six months since the sale under the decree ; and their equitable right, as distinct from their statutory right, is gone, for they have had their day in Court, and it is barred by the decree.    (Whitney v. Higgins, 10 Cal. 554.)

The decree recites that the case was considered " upon the pleadings and evidence."    This is sufficient to show that the requisite proof was presented to the Court of the amount due, even if any proof had been necessary upon the default of the defendants.    But even were this otherwise, the presumption would be indulged to support the proceedings that the Court below was informed of the matter in a proper and regular manner.    (Crane v. Brannan, 3 Cal. 192.)

The clause in the decree foreclosing the equity of redemption of the defendants is an useless formula, which does not enlarge the effect of the decree, or any rights of the purchaser under it.    (McMillan v. Richards, 9 Cal. 412.)    The equitable right to redeem property sold under a decree of foreclosure held by subsequent incumbrancers is merged into the statutory right, not by any force given to the language of the decree, but by the fact that they have had their day in Court, and an opportunity of setting up any equities they possessed. After the decree, they stand as to their right of redemption in the same position as ordinary judgment debtors.

The question presented by the last assignment of errors is, whether any averment in the complaint of the presentation of the note at the place where by its terms it was made payable was essential.    We pass over the objection that the question cannot be raised for the first time on appeal, and upon which we express no opinion, as it is not pressed by counsel, and will consider the question as if regularly taken in the Court below.    The question has been frequently discussed in the Courts of the several States, and in the Federal Courts ; and at this day it is the received doctrine in the United States, that in a suit against the maker of a promissory note, or the acceptor of a bill of exchange—and there is no distinction between the two classes of cases

—payable at a particular place, it is unnecessary to aver a presentation for payment at the place in the complaint, or to prove such presentation at the trial. The rule is different in England as to promissory notes, as we shall hereafter observe. The American doctrine proceeds upon the ground that the maker or acceptor is the principal debtor ; that the debt is not discharged as to him by the omission or neglect to demand payment when it becomes due at the place where the same is payable ; that it is due generally, and will continue due until paid, though the creditor is not present at the time and place designated to receive payment ; and that it is matter of defense on the part of the maker or acceptor to show his readiness with the funds at the time and place, and the omission or neglect of the plaintiff to present the paper for payment ; and such defense will be only a bar of the damages and costs, and not of the debt.

The question as to the necessity of proof of demand of payment at the place designated arose before the Supreme Court of New York, in 1809, in a suit against the acceptor of a bill of exchange, payable at a mercantile house in London (Torden *et. al. v.* Sharp, 4 Johns. 183) and the Court said : " The holder of a bill of exchange need not show a demand of payment of the acceptor any more than of the maker of a note. It is the business of the acceptor to show that he was ready at the day and place appointed, but that no one came to receive the money, and that he was always ready afterwards to pay." In Wolcott *v.* Van Santvoord (17 Johns. 248) the precise question involved in the case at bar was decided. That was an action against the acceptor of an inland bill, payable at the Bank of Utica, and the declaration contained no averment of demand at the bank, or at any particular place, and for want of the averment the defendant demurred. The Court gave judgment for the plaintiff, and Mr. Chief Justice Spencer, who delivered the prevailing opinion, reviews the English cases, and shows their contradictory character on the necessity of the averment or proof. " The non-attendance," says the Chief Justice, " of the holder of the bill at the time and place of payment can produce no worse consequences to him than if he had attended, and the acceptor had also been present and tendered the money, which the holder had refused to accept. Under such a state of facts, what is the legal consequence ?

It is perfectly well settled that when a debt or duty exists, such as the payment of a sum of money, a tender of the money, though it be refused, does not extinguish the debt or duty, but it remains obligatory on the party owing the debt or duty; as if an obligation be for the payment of a less sum, this being a duty and part of the obligation, shall not be lost by tender and refusal; for if he pleads a tender, he shall say *uncore prist*." (Com. Digt., tit. Condition, L. 4, Co. Lit. 207-a.) In Giles *v.* Hartie (1 Lord Raym. 254) Holt, C. J., ruled that "though a tender is made, and the plaintiff refuses the money, yet the tender cannot be pleaded in bar of the action, neither in debt nor assumpsit, but in bar of the damages only; for the debtor shall, nevertheless, pay his debt. This is a principle too familiar to every lawyer to require a statement of the numerous authorities to support it. Nor is it necessary, where a regular tender has been made, and a refusal to accept it, for the plaintiff to make a special demand subsequently, and before he brings his action; the action itself is a demand." And in reference to the case of Bowes *v.* Howe, in the Exchequer Chamber (5 Taunt. 30) in which it was decided that in an action against the maker of the note by the payee or bearer, where the place of payment is designated, a presentation at that place for its payment is a condition precedent, and an omission to aver such presentment in the declaration is fatal in arrest of judgment or in error, the Chief Justice remarks: "It is perfectly certain that the Exchequer Chamber did not proceed on the ground that the debt demanded was a collateral obligation or promise. They not only do not say so, but the case did not admit of their saying so, for the action there was against the makers of a note payable at the Workington Bank; and I never can conceive that decision to be law, that a mere failure to present a note at the time and place of payment, and making a demand, shall exonerate the party forever, though the debt or duty remains; the principle of it is that the undertaking was a condition precedent, and that the duty could not be enforced without a strict compliance with the condition; and it goes the whole length of deciding that even a subsequent demand or any other form of action would be ineffectual. For if the condition must be averred and proved, and there has, in fact, been no demand, the holder of the note must be remediless. From such a doctrine I

entirely dissent, and must think that the time and place of payment are merely *modal*, forming no essential part of the contract; that it is incumbent on the defendant, whether the payee was at the place at the time appointed or not, to show in his defense that he was there ready and willing to pay, and that the payee did not come, etc. ; that .the consequences of the absence of the payee, under such circumstances, unless he makes a subsequent special demand, and there be then a refusal, are merely that he must be content with receiving the sum originally payable; and if he sue, without having·made a special demand, he loses all claim to damages and costs, and will himself be subject to them.

In Caldwell *v.* Cassidy (8 Cowan, 271) the same question arose in a suit against the maker of a promissory note, payable at the Franklin Bank, New York. The defendant pleaded that he was at the time and place of payment mentioned in the note, ready and willing to pay the money, and ever since had been and was then ready and willing to pay at the bank, but that the plaintiff never demanded payment nor presented the note for payment at the bank. On demurrer the plea was held bad in being in bar of the action and not of the damages, and in not showing the defendant was ready by bringing the money into Court, and the plaintiff had judgment. In the opinion of the Court, Savage, C. J., says : " Whatever be the rule in other Courts, the rule of this Court must be considered settled in the case of Wolcott *v.* Van Santvoord ; that when a promissory note is payable at a particular place on a day certain, the holder of the note is not bound to make a demand at the time and place, by way of condition precedent to the bringing of an action against the maker. But if the maker was ready to pay at the time and place, he may plead it as he would plead a tender, in bar of damages and costs, by bringing the money into Court."

In Green *v.* Goings, decided in 1850, (7 Barb. 653) the same rule as to the proof of presentation is maintained. In that case the draft was accepted, payable at the Onondaga County Bank, and the Court held that as between the acceptor and endorser, the acceptor was liable without demand of payment, although the draft was accepted payable at a particular place ; that in such cases the acceptor is the principal debtor liable without demand, a suit as in other cases of a precedent ·

debt or duty being a sufficient demand: citing the cases above from Johnson and Cowan.

The same question came before the Supreme Court of Massachusetts in 1812, in Ruggles v. Patten, (8 Mass. 479) in a suit against the maker of a promissory note payable at the Penobscot Bank, kept at Buckstown. The defendant pleaded that he was present at the maturity of the note at the Bank, ready and willing to pay according to the tenor of his promise, in one of the several counts of the declaration, and that the plaintiff was not there ready or present to receive the payment; and on demurrer, the Court held that this was no bar to an action on a promise to pay money, and that the issue tendered was an immaterial one.

In Carley v. Vance (17 Mass. 389) the question was again presented in a suit against the maker of a note, payable " at Mr. E. L.'s counting-room, in Cross street, Boston." The defendant pleaded a deposit of the funds before the maturity of the note with E. L. for its payment, and that E. L. was ready with the money to pay the note at his counting-room on the day it became due, but that the plaintiff was not there to receive it; and on demurrer the plea was held bad for want of proffert of the money. The Court, in its opinion, says : " The objection taken in this case to the declaration for the want of an allegation of a demand at the time and place appointed for payment, cannot, we think, be maintained. It is difficult to reconcile all the cases ; but the weight of authority is opposed to the objection, and it has no foundation in principle."

The same rule as to the proof of demand of payment was maintained in 1834, in Payson v. Whitcomb, (15 Pick. 212) in which the Court observes, that whatever may be considered the law in England on the point, it has been settled in Massachusetts that no such demand is necessary.

In Maine the same rule prevails. (Bacon v. Dyer, 3 Fair. 19; Berwick v. O'Kyle et al., Ibid. 340; McKenney v. Whipple, 21 Maine, 98.) In Berwick v. O'Kyle, the Supreme Court of that State held that in an action against the maker of a promissory note, payable at a particular time and place, it is unnecessary to aver a presentment at such time or place ; and when such averment is made, the plaintiff may

recover without offering proof in its support, inasmuch as it may be stricken out, and still leave the declaration sufficient.

The same doctrine is maintained in the Courts of the other New England States. (Eastman *v.* Fifield, 3 N. H. 333 ; Otis *v.* Barton, 10 N. H. 433 ; Hart *et al. v.* Green, 8 Vt. 191 ; Eldred *v.* Hawes, 4 Conn. 465.)

In this last case Mr. Chief Justice Hosmer, of the Supreme Court of Connecticut, after referring to the diversity and contrariety of opinion expressed by the English Judges on the subject in question, and citing the cases of Wolcott *v.* Van Santvoord (17 John. 248) and Carley *v.* Vance, (17 Mass. 389) observes that the weight of decision appears to be much against the legal necessity of averring a demand at the place appointed for payment, and says :

" On principle, I am led to a similar result. What was the intent and understanding of the parties in rendering the note payable at a certain place ? Was it that the debt should be lost if there was not a strict presentment and demand on the day and at the place of payment ; or was it only that the debtor should stand excused of damages and costs if he were ready to pay the money at that place according to his contract ?"

" In support of the rigid construction, rendering the demand a condition precedent, there are the *words* of the contract only ; but that a presentment and demand were not understood to be an essential part of the contract, the *subject matter* and the *effects* and *consequences* make it abundantly manifest.

" It can scarcely be believed that the creditor should agree with his debtor, or that the latter should request an agreement, if through accident or negligence the demand were not strictly made at the time and place prescribed, that an honest debt should be forever lost ; and yet, on this foundation rests the defendant's objection. In subversion of this idea it is indisputably established, where a mere duty is promised to be paid upon request, (and every promissory note presupposes an antecedent debt) that no actual request is necessary. 1 Sand. 32. And although this rule may be varied by an express agreement of the parties, yet such an agreement should appear with unquestionable force."

\*    \*    \*    \*    \*    \*    \*

" It may, however, be inquired ; if the specification of place in the contract was not intended to form a condition precedent, by binding down the party to a strict demand at the place, what else could it intend ?   This question proceeds on the supposition that the insertion of the place of payment ·in the note could subserve no valuable purpose but the one for which the defendant insists.   In contravention of this idea, it is very apparent that the mentioning of a place of payment is attended with important uses.   It enlarges the privilege of a promisee of a note, by conferring on him a right to expect a reception of his money at a specified place other than that with which the law had invested him.   It imparts a privilege to the maker of a note, by authorizing payment at a certain place, and not limiting him to a personal demand ; and often relieves him from the risk attendant on keeping a large sum of money in his house.   Superadded to this, it confers on him the power, by a readiness to discharge his contract at the place prescribed, to prevent the accumulation of interest or the burden of costs.   To assert that this construction of the contract is free from all possible inconveniences, I do not feel myself justified ; but it is demonstrably clear that the inconveniences are less to the debtor than the loss of the debt, which attends the other construction, would be to the creditor."

In Weed v. Van Houten (4 Halsted, 189) the question was presented to the Supreme Court of New Jersey ; and the Chief Justice in his opinion, after a review of numerous English and American cases, expresses his entire concurrence in the rule established by the American decisions, which he is satisfied is most conformable to sound reason ; most conducive to public convenience ; best supported by the general principles and doctrines of the law, and most assimilated to the decisions which bear analogy more or less directly to the subject.

The same rule is established by the Supreme Court of Pennsylvania, in Titler v. Bakley, 2 Watts & Sgt. 458 ; by the Supreme Court of Ohio, in Administrators of Conn v. Executors of Gana, 1 Ham. 483 ; by the Supreme Court of Illinois, in Butterfield v. Kinzier, 1 Scam. 445 ; by the Supreme Court of Tennessee, in McNairy v. Bell, 1 Yerger, 502, and Mulkerrin v. Hannum, 2 Yerger, 81 ; by the Court of Appeals of Virginia, in Watkins v. Crouch & Co., 5

Leigh, 522; by the Court of Appeals of Maryland, in Bowrie v. Duval, 1 Gill & John. 181; by the Supreme Court of Texas, in Edwards v. Husbrook, 2 Texas, 578; by the Supreme Court of Mississippi, in Washington v. Planters' Bank, 1 How. 230; by the Supreme Court of Alabama, in Irwin, Admr., v. Withers, 1 Stewart, 234, and in Evans v. Gordon, 8 Porter, 142; and by the Supreme Court of the United States, in Wallace v. McConnell, 13 Peters, 136.

The ruling of the Courts of Indiana, Louisiana, and of this State, form, so far as we are able to ascertain, the only exceptions to the otherwise uniform current of decisions in the United States on the question under consideration. After the Supreme Court of Indiana had laid down the rule that the presentation at the place of payment must be averred and proved, (Palmer v. Hughes, 1 Black. 328) the Legislature, probably finding it worked only inconvenience and injustice, interfered and changed the rule. (Rev. Stat., 1843, p. 711.)

The decisions of the Supreme Court of Louisiana do not present the question in any new light from the earlier English cases. (Mellon v. Croghan, 15 Martin, 422; Warren v. Alnutt, 12 La. 454; Corillo v. Bank of United States, 10 Rob. 533.)

In England, previous to the decision of the case of Rowe v. Young by the House of Lords in 1820, (2 Brod. and Bing. 165) there was great diversity and contrariety of opinion on the question among the Judges. In Callaghan v. Aylett, (3 Taunton, 397) decided by the Common Pleas in 1811, it was held in an action against the acceptor of a bill payable generally, but accepted payable at a particular place, that the plaintiff must prove a presentation at the place designated.

In the same year the King's Bench held, in Fenton v. Goundry, 13 East. 449, that it was unnecessary to aver a presentation at the particular place where by the acceptance the bill was made payable; that the acceptance bound the party generally and universally, and that the action itself was a demand upon the party sued. Previous to this decision, Lord Ellenborough had held at nisi prius, in 1808, in Lyon v. Sandiers, (1 Camp. 423) that the acceptor of a bill payable at a particular place was liable universally; that the place of acceptance formed no part of the contract, and did not require to be set out in the declaration; and in 1810, in Nicholas v. Bowers,

(2 Camp. 498) that there was no necessity of proving, in a suit against the maker of a promissory note, the presentment at the place designated. In this last case, the counsel for the plaintiff stated that he had a witness in Court to prove the presentation at the banker's the day the note became due; but Ellenborough replied that he was afraid to admit such testimony, lest doubts should arise as to its necessity. In Wild v. Rennards, tried in 1809, Bayley, Judge, made a similar ruling.

In Sanderson v. Bowes, (14 East. 500) subsequent to the decision of Fenton v. Goundry, the King's Bench held on demurrer that a promissory note of the defendants', payable by its terms at their banking house at Workington, must be demanded there to give the holder a right of action if it be not paid. The Court draws a distinction between that case and Fenton v. Goundry, in this: that in the latter case the place was not designated in the body of the bill, but only in the acceptance; and in Dickenson v. Bowes, (16 East. 112) decided in 1812, the same ruling was made by the Court.

Subsequently to the decision in Fenton v. Goundry by the King's Bench, the question again arose before the Common Pleas, in 1814, in Gamon v. Schomoll, (5 Taunt. 344) and that Court reiterated its former opinion, and held that the acceptance payable at a particular place was a qualification of the contract, and therefore the presentation of the bill at such place was a condition precedent which must be averred and proved, whether the action be against the drawer or acceptor. (5 Taunt. 30.)

In Bowes v. Howe, decided in the Exchequer Chamber, in 1813, it was held, in an action against the maker of a promissory note payable at a particular place, that the presentment at the place must be averred and proved.

These were the principal cases in which the English Judges and Courts had expressed their opinion previous to the decision of Rowe v. Young. Between the King's Bench and the Common Pleas there was a conflict of opinion. Whether the decisions of the Court of King's Bench in Fenton v. Goundry and Sanderson v. Bowes, or of Ellenborough in Lyon v. Sandiers, and of Bayley, J., in Wilds v. Rennards, can be reconciled, we do not propose to consider. In the

actual conflict between the two Courts, and the seeming conflict of the King's Bench with itself, and with the decisions of its Judges at *nisi prius*, the case of Rowe *v.* Young was brought before the House of Lords. That was an action against the acceptor of a bill payable generally, and accepted payable at a particular place. The principal questions involved were, whether a presentment for payment at the place designated, and the averment of such presentment in the declaration, were necessary; and whether the acceptance was to be considered as a qualified acceptance or a general acceptance, with an additional engagement or direction for its payment at the designated place. The opinions of the twelve Judges were asked on the questions. Eight of the Judges were of opinion that the presentment and averment were unnecessary to hold the acceptor, and four that they were necessary; and yet the judgment was reversed in accordance with the views of the minority, sustained by the opinions of Eldon and Resedale.

To our minds, the prevailing opinion of Lord Eldon is unsatisfactory, and does not meet the arguments advanced in the opinions of several of the law Judges. As the decision of the highest tribunal in the realm, it is of course binding upon the Courts of England; but as an exposition of the law, in the face of the able opinions of the eight Judges, its weight in this country can be slight, and none as against the general current of adjudications of the American Courts. We have referred to these decisions of the English Courts, because upon their authority the opinion of this Court in Wild *v.* Van Valkenburgh (7 Cal. 166) is based. The decision in this case has never met the approval of the profession, and has been the occasion of constant inconvenience and frequent injustice, and we have no hesitation in overruling it.

Immediately following the decision of the House of Lords in Rowe *v.* Young, it was found expedient, either from the injustice the rule established would work upon past, or the inconvenience it would create as to future contracts, to change the rule by legislative enactment; and by 1 and 2 Geo. IV (ch. 78) it was provided: "That after the first of August, 1821, if any person shall accept a bill of exchange, payable at the house of a banker or other place, without further

expression in his acceptance, such acceptance shall be deemed and taken to be, to all intents and purposes, a general acceptance of such bill. But if the acceptor shall in his acceptance express that he accepts the bill payable at a banker's house, *or other place only, and not otherwise or elsewhere,* such acceptance shall be à qualified acceptance of such bill; and the acceptor shall not be liable to pay the bill, except in default of payment, when such payment shall have been first duly demanded at such banker's house or other place.

The question under consideration is at best only one of construction. What is the meaning of the parties in designating the place of payment in promissory notes, or in the body or acceptance of bills of exchange, according to commercial usage? We are confident that it is not to insert a condition precedent, so that upon failure of the holder to attend at the designated place he shall forfeit his entire demand. No such intention exists, either with the maker or receiver of the note or bill. A note thus framed, or a bill thus accepted, is like any other contract to pay at a designated place. The undertaking of the parties, and the legal effect of such contracts is this: that if ready at the time and place with the funds, the obligor has so far satisfied the contract that he cannot be responsible for any future damages, either as costs of suit or interest for delay; not that he is thereby discharged of the debt. No one would receive an obligation depending upon such a contingency for its ultimate satisfaction. The insertion of the place of payment is usually made for the convenience of one of the parties, and is given and received with that understanding and none other.

It follows from the views we have taken of the questions in this case that the judgment must be reversed as to the defendant, Middlemass, and affirmed as to the other defendants.

Ordered accordingly.