# Connerly & Co. *v.* Planters' & Merchants' Insurance Company.

*Action on Promissory Notes, by Assignee against Makers.*

1. *Discontinuance as to one of several defendants.*—In an action *ex contractu* against two or more defendants, one of whom pleads *non est factum*, or other matter of discharge personal to himself, the plaintiff may enter a discontinuance as to him, without affecting his right to proceed to judgment against the others.

[Connerly & Co. v. Planters' & Merchants' Ins. Co.]

2. *Promissory note; presentment or demand of payment.* —When a negotiable promissory note is made payable at a particular place, the primary duty of the maker is to make payment at the time and place appointed, though the note may have been transferred or assigned by the payee; and the failure or laches of the holder in making presentment, or demanding payment, does not relieve the maker from liability, unless continued until a recovery is barred by the statute of limitations.

3. *Accommodation paper ; notice of non-payment to maker.*—When a negotiable promissory note is made for the accommodation of the payee, without any consideration moving from him to the maker, if that fact casts on the holder the duty of giving notice of non-payment to the maker, it must be shown that he knew the fact at the time of the maturity of the note.

4. *Presentment for payment: when necessary, and effect of failure.*-- When a negotiable promissory note is made payable at a particular place, presentment at that place, on the day of maturity, is not necessary to fix the liability of the maker; but, if he was there in readiness to pay, or had deposited funds there to meet it, and loss ensued to him from the failure to present it, this might be matter of defense.

5. *Liability of maker of accommodation paper.*—When a negotiable note is made for the accommodation of the payee, and is left with him, to be used in the general transaction of his business, it has no vitality while it remains in his possession; but, when negotiated by him, it stands on an equality with other commercial paper, and the maker is bound primarily and unconditionally for its payment.

6. *Same.*—If such note was not made for any special purpose, and there was no restriction on its use by the payee, the title and rights of the holder, as against the maker, would not be affected by the fact that he acquired it from the payee after maturity, and with knowledge of the relation existing between the payee and the maker.

7. *Negotiable paper ; transfer as collateral security.*—The rule has been long settled here—"so long that it can not be departed from without disturbing transactions it may have influenced"—that a holder of negotiable paper as collateral security for a pre-existing debt is not a *bona fide* holder for value, nor entitled to protection against equities and defenses existing between prior parties, of which he had no notice.

8. *Same; rights of holder.*—The holder of negotiable paper, acquiring it before maturity, in the ordinary course of business, is presumed to have acquired it for a valuable consideration; but, when illegality, want or failure of consideration, or bad faith in giving it circulation is shown, the holder must prove that he acquired it before maturity, and for a valuable consideration—that is, by the payment of money, or other thing of value, or by the postponement or surrender of some legal right, or by changing his position in some respect for the worse.

9. *Charge to jury on part of evidence.*—When the evidence presents the case in two different aspects, the court may, without error or impropriety, instruct the jury as to the law applicable to one of those aspects, or under one hypothesis, without noticing the other; and if injury is apprehended from such instructions, the party may guard against it by requesting additional or explanatory instructions.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by the Planters' and Merchants' Mutual Insurance Company of Mobile, a domestic corporation, against Henry Connerly and Catherine Connerly, as partners doing business under the firm name of H. Connerly & Co.; and was commenced on the 26th August, 1875. The action was founded on two promissory notes, executed by said H. Connerly & Co. as makers, payable to the order of

[Connerly & Co. v. Planters' & Merchants' Ins. Co.]

R. & P. A. Weaver, and transferred by them to the plaintiff; one being for the sum of $1,083.76, dated the 19th May, 1873, and payable on the 9th January, 1874, at the National Commercial Bank of Mobile; and the other for $1,197.83, dated the 20th January, 1874, and payable sixty days after date, at the Deposit Savings Association of Mobile; and each containing an indorsement by said R. & P. A. Weaver in these words: "Protest and notice of protest waived." The complaint contained, also, the common money counts. A special plea of *non est factum* was interposed by Catherine Connerly, denying that the notes were signed by her, or by any one authorized by her; and the evidence on the trial disclosing the fact that she was not a member of the firm of Connerly & Co. at the time the notes were executed, the plea was admitted by the plaintiff, as the judgment entry recites, "and the action dismissed as to her, by leave of the court." Two special pleas were interposed by H. Connerly; the first alleging that the two notes were made by said H. Connerly & Co. for the accommodation of said R. & P. A. Weaver, without any consideration moving from them to the makers, of which fact plaintiff had notice; that the notes were deposited by said R. & P. A. Weaver with plaintiff, as collateral security for a pre-existing indebtedness; and that after the maturity of said notes, upon a new and valuable consideration moving from said payees to plaintiff, the payment and collection of said notes was postponed by plaintiff without the consent of said Connerly & Co. The second plea alleged, that said notes were signed by Connerly & Co. solely for the accommodation of said R. & P. A. Weaver, and as sureties for them, and without any consideration, "all of which was within the knowledge of plaintiff; and that said notes, at the time of their maturity, and at no other time, were ever protested; and defendants had no notice of any protest, and no notice whatever that plaintiff held said notes, until more than twelve months after they became due." Issue was joined on each of these pleas, and a trial by jury had, which resulted in a verdict and judgment for the plaintiff, for $1,765.38.

On the trial, as the bill of exceptions shows, the plaintiff read in evidence the notes on which the suit was founded, and then introduced said H. Connerly as a witness, who testified that he alone did business under the name of H. Connerly & Co., since the death of his former partner, who was his nephew; and the suit was thereupon dismissed as to Catherine Connerly, as above stated. Said witness testified, on cross-examination, "that his business was that of a general merchandizing character, selling groceries, dry-goods, &c., and buying cotton, at Vienna in said county of Pickens;

that he had long known R. & P. A. Weaver, who formerly
lived in his neighborhood; that they were commission-mer-
chants in Mobile, up to March 26, 1876, when they failed;
that he had been a patron of their house, to some extent, for
several years, but did most of his business with another
house in Mobile; that he owed said Weavers nothing at the
date of said notes, and has owed them nothing since; that
he signed said notes, as an accommodation maker, at the re-
quest of said Weavers, and took from them a receipt, or
statement," which he produced, and which was in these
words: "Received, Mobile, May 19, 1873, from H. Connerly
& Co. $2,281.59, in full payment of two notes of this date,
drawn by them in our favor, as follows," describing the notes;
"which said notes are, it is agreed and understood, merely
given by H. Connerly & Co. to R. & P. A. Weaver as accom-
modation notes, and are not understood by either party to
indicate any indebtedness on the part of said H. Connerly
& Co. to said R. & P. A. Weaver." Said witness "further
testified, that he did not know what said Weavers ever did
with said notes, until after their failure, and more than six-
teen months after the maturity of said notes; that he was
notified by letter from plaintiff that said corporation held
and claimed said notes; that the note falling due on the
8–11th of December, 1873," one of the notes described in the
receipt; "was renewed on the 20th May, 1874, at sixty days,
but this was done at the instance of the Weavers alone; and
that he had no notice of the non-payment of said notes at
maturity, nor afterwards until after the failure of the Weavers
as above stated. Defendant's counsel proposed to ask said
witness, if he could not have protected himself against loss,
if at the maturity of said notes he had been notified of their
non-payment; also, if he and the Weavers were not then
perfectly solvent." To each of these questions the plaintiff
objected, and the court sustained the objections; to which
rulings the defendant duly reserved exceptions. "The de-
fendant then proposed to ask the witness said questions, as
tending to show the jury that the fact of the non-payment of
the notes was caused by the laches of the plaintiff in permit-
ting said notes to remain so long in the hands of the plain-
tiff without effort to collect them, and until after the failure
of the Weavers; but the plaintiff objected to the questions
being asked and answered for this purpose, and the defend-
ant excepted. The witness then testified, that no provision
had been made for his indemnity, and that he knew nothing
of the business relations between plaintiff and the Weavers."

As to the circumstances under which the notes were trans-
ferred by the Weavers to plaintiff, there was a conflict be-

tween the evidence offered on the part of the plaintiff, and that offered by the defendant. The plaintiff's evidence consisted of the depositions of Charles K. Foote, who was the president of said corporation at the time said notes were acquired by it, and of C. A. Lathrop, who was then its secretary. Foote thus testified : " Said notes were received by C. A. Lathrop, secretary of said company. The note for $1,083.76 was transferred to plaintiff by said Weavers on the 30th June, 1873, and the note for $1,197.83 was received about the 22d January, 1874, by said Weavers' indorsement before maturity, for a full and valuable consideration in money, paid by plaintiff to said Weavers at the time. Plaintiff received the notes in the usual course of business. The money was advanced to the Weavers on the faith and credit of the said notes now sued on, and at the time plaintiff acquired said notes ; and they were taken in the ordinary course of business, for money loaned and advanced to the Weavers on the faith of said notes. The plaintiff had, at the time the notes were acquired from the Weavers, no notice or information that said notes had been executed by Connerly & Co. for the accommodation of the Weavers, and was not informed that no consideration passed from the Weavers to Connerly & Co. At the time the notes were acquired, the Weavers said the makers were good and solvent ; and Reuben Weaver told me that the notes were legitimate business notes—that they were for advances his firm had made to said Connerly & Co. I did not have any information that Connerly & Co. had any defense to these notes, when they were received, or since : on the contrary, the Weavers said the parties were good and solvent, and that the notes were valid." C. A. Lathrop testified : The note for $1,083.76 was received by me, on the 30th June, 1873, for a full and valuable consideration in money at the time ; and the note for $1,197.83 was received by me on or about the 22d January, 1874, for a full and valuable consideration in money at the time. Said notes were indorsed by R. & P. A. Weaver. They were not paid at maturity, and are still due and unpaid. They were not protested for non-payment, because protest and notice was waived by said Weavers, by writing indorsed on each note. Said notes were received by plaintiff before their maturity, and were taken by plaintiff, at their face value, for a loan of money. They were not taken as collateral security for a pre-existing debt, but were taken, at the dates mentioned, in the regular course of business, for a full consideration, and on the faith of said notes. At the time said notes came into the plaintiff's possession, R. & P.

A. Weaver became indebted to plaintiff in about the sum of $7,000 ; and said indebtedness has never been paid in full."

*R. Weaver* testified, on behalf of the defendant : "These notes were placed with plaintiff, by R. & P. A. Weaver, some time during the summer or fall of 1873, together with many other notes of various amounts, as collateral security for money borrowed by said Weavers on their own notes discounted by plaintiff. At the time the Weavers placed these notes with plaintiff, they owed plaintiff, say from six to seven thousand dollars. The notes were transferred to plaintiff before maturity ; but, several times since said notes fell due, said Weavers paid plaintiff sundry sums of money, and took up various notes held by plaintiff as collateral security, and substituted others in their stead, these notes of Connerly & Co. lying there all the while. Several times, while these notes were in plaintiff's possession, and past due, said Weavers owed plaintiff small amounts of money, but never did at any one time pay out in full. In addition to all other collaterals, plaintiff had fifty shares of its own stock belonging to said Weavers, worth on the market $100 per share, and on the books of the company worth, say $118 to $130 per share, and which was taken from said Weavers by plaintiff at par. These notes were left, or allowed to remain with the plaintiff, merely as an oversight, or through carelessness on the part of said Weavers, they not anticipating that any trouble would arise from it. They had settlements with plaintiffs since said notes fell due, and had fresh paper to place with plaintiff, in place of these notes, if plaintiff had notified them. When said notes fell due, Weavers overlooked them, and did not take them up, and replace them by leaving fresh paper, as they were ready to do, if they had been notified by said plaintiff."

*H. A. Woodhull*, a clerk, or book-keeper for R. & P. A. Weaver, thus testified : "These notes, with many others, were placed with plaintiff by R. & P. A. Weaver, as collateral security for their notes, which plaintiff had discounted for them. Weavers had a 'line of loan' with plaintiff, and, when they needed money, would make their note or notes, and get plaintiff to discount them, and advance the money on them ; and whenever plaintiff desired security, they would so notify said firm, and the firm would then deposit notes and stocks as collaterals ; and in this way the notes of H. Connerly got into plaintiff's possession. I do not know how much the Weavers owed plaintiff at the time these notes were deposited with plaintiff. The amount of their indebtedness would vary : some times they would be flush with money, and would take up their notes as they fell due ; and then again, in a few

days, they might want money, and would make new notes, and get plaintiff to discount them. I do not know exactly when these notes were deposited with plaintiff, but I am pretty sure it was before they fell due. After said notes were deposited with plaintiff, R. & P. A. Weaver paid plaintiff, at different times, sums of money amounting in all to a much larger sum than they then owed to plaintiff; but, as they continued to borrow money from plaintiff, by having their notes discounted, they kept in debt to plaintiff to some extent, and at no time, while I was in their employment, did they make a full and final settlement. Said notes were not transferred to plaintiff in payment of a debt due from the Weavers, but, as above stated, as collateral security for such debt. I do not know why they were not delivered up after they fell due." *Philip A. Weaver*, a member of the firm of R. & P. A. Weaver, who acted as their cashier, testified to the same facts in substance; and *R. B. Weaver*, a clerk in their employment at the time, also testified to the same facts. After the plaintiff had taken from the Weavers, by resolution of the board of directors, the fifty shares of stock standing in their names, there remained a balance due from them to plaintiff, August 8th, 1876, of $1,681.50; and plaintiff announced to the court and jury, during the trial, that a recovery was only sought for this balance.

The above is the substance of the evidence, as set out in the bill of exceptions, which purports to set out all the evidence adduced; and the court thereupon gave the following charges to the jury, on the request in writing of the plaintiff:

"1. The two notes sued on in this case are commercial, or mercantile paper, and are governed by the rules of the law merchant. These notes, in the hands of the plaintiff, import a consideration passing between the original parties; and when the holder of such paper acquires it before maturity, the law presumes, ordinarily, that he obtained it for a valuable consideration.

"2. But, when it is proved that such paper was put into circulation through fraud, or want or failure of consideration, the presumption that the owner paid value for it is overcome, and it is incumbent on him to prove that he paid value for the paper, and acquired it before it was due, and without notice. And if the jury believe that the plaintiff acquired the notes sued on in this case before their maturity, for a full and valuable consideration in money paid to R. & P. A. Weaver, the indorsers, by the plaintiff, at the time the plaintiff obtained the notes, and in the usual course of business; then the plaintiffs are holders for value, and entitled to recover. If the jury should believe that money was advanced to the

said Weavers, on the faith and credit of the notes here sued on, and that, at the time plaintiff acquired the notes, they were taken in the ordinary course of business, for money loaned or advanced to the Weavers, then the plaintiff is entitled to recover in this action.

"4. If the jury believe that the plaintiff, at the time of acquiring said notes, took them in payment of a debt then due by the Weavers; or that upon the faith of said notes other notes or securities were relinquished; or that further indulgence was given by the plaintiff to said Weavers; or that any new consideration was then given by the plaintiff to the Weavers, on the faith of the said notes; or that the plaintiff then advanced money to the Weavers on the notes, or continued their advancements of money to the said Weavers on the faith of said notes; then the plaintiff is a holder for value, and is entitled to recover in this action.

"5. If the jury believe that, at the time these notes were transferred to plaintiffs by the Weavers, they were transferred as collateral security for money then borrowed from plaintiff by the Weavers, on the faith and credit of said notes; although the plaintiff may have discounted the notes of the Weavers at the time, yet, if the discount of their own notes was obtained by them on the faith of the Connerly notes, and the transfer of the Connerly notes was the condition upon which they obtained the discount of their own notes, then the plaintiff is a holder for value, and is entitled to recover in this action.

"6. If the jury believe that the consideration for the transfer of these notes was the extension of the indebtedness of the Weavers, giving them time on their debts to the plaintiff; then the plaintiff is a holder for value, and is entitled to recover.

"7. If the jury believe that these notes were held by the plaintiff, not merely as collateral security, but that some new consideration was given, by the discharge or surrender of other paper, at the time of the transfer, and on the faith and credit of the Connerly notes; then the plaintiff is a holder for value, and is entitled to recover.

"8. If the jury believe that the plaintiff, at the time of acquiring the notes now sued on, was a corporation in this State, clothed by its charter with authority to use its money in lending out the same, or discounting or purchasing promissory notes or bills of exchange, and was accustomed to make advances from time to time for the Weavers as customers, and did make advances on the faith of the said Connerly notes, which were at the time of the first advance transferred to plaintiff; and that plaintiff held possession of said notes

all the while; then plaintiff is deemed a holder for value, and to have a lien on said notes to the extent of such advances, and is entitled to recover to the extent of the advances.

"9. If the jury believe that the notes here sued on were indorsed before maturity by R. & P. A. Weaver to the plaintiff, as collateral security for money then loaned and advanced to them, on the faith of these notes and others indorsed as collaterals; and that the money so advanced has not been repaid, and there is still due to plaintiff the sum of $1,681.50 for the moneys so advanced; then plaintiff is a holder of said notes for value, and is entitled to recover in this action the amount still due for such advances."

The defendant excepted to each of these charges except the second, and then requested several charges in writing, all of which were given by the court except the following: "1. When a party becomes the holder of accommodation paper as collateral security for a pre-existing debt, or for a debt partly made at the time of the transfer, he must present the note to the maker, within a reasonable time after the maturity of the same, so as to bind the accommodation maker. If, therefore, the jury find, from the evidence, that there was unreasonable delay on the part of the plaintiff to present the notes sued on to the maker after their maturity, and that the Weavers, the payees of the notes, had in the meantime become insolvent; then they may find for the defendant." To the refusal of this charge the defendant excepted.

The exclusion of the evidence to which exception was reserved, the charges given and excepted to, and the refusal of the charge asked, are now assigned as error; and it is also assigned as error, that the court could not render judgment against H. Connerly, the appellant, after the dismissal of the action as against Catherine Connerly.

M. L. STANSEL, and D. S. TROY, for appellant.

L. M. STONE, *contra.* (No briefs on file).

BRICKELL, C. J.—The plea of *non est factum*, interposed by Catherine Connerly, was matter of defense purely personal. In actions *ex contractu*, if one of several defendants plead matter in his particular discharge, not directed to the merits, it is the right of the plaintiff to enter a *nolle-prosequi*, or discontinuance as to him, without producing a discontinuance as to the other defendants.—1 Chitty's Pl. 604; *Mock v. Walker*, 42 Ala. 668; *Reynolds v. Simpson*, at the last term,

The instruments, on which the action is founded, have every quality of negotiable promissory notes. Each is for the payment of a specific sum of money, absolutely, at appointed times, and designated places, to a partnership, by its firm name; and the statute declares, that they are subject to, and governed by, the commercial law.—Code of 1876, § 2094. Looking alone to the face of the paper, the primary duty resting on the maker, though the payees had indorsed it, was payment at the times and places appointed. The passiveness of the holder—*laches* in making presentment of them, or in demanding payment—would not lessen the duty of the maker, nor relieve him from liability, unless continued until the statute of limitations would bar a recovery.

The evidence offered of the solvency of the maker, and of the indorsers (the payees), when the notes became due, and of the ability of the maker to have protected himself from loss, if he had been then notified the notes were unpaid, to say the least of it, *prima facie*, was irrelevant, and properly excluded. If the fact that the notes were accommodation paper, made without consideration moving from the payees to the maker, and that as between them the duty of making payment rested on the payees, would cast on the holder the necessity of giving notice of non-payment to the maker, it should have been shown that he knew, at the time of its maturity, the character of the paper, and of the relation subsisting between the maker and the payees. Men can not, without their knowledge, be subjected to duties of this kind, and to loss, if they are not observed. There was no evidence tracing to the holder any notice, until after the maturity of the paper, and the suspension of business by the payees, that it was not precisely what on its face it purports to be— an unconditional promise, on a valuable consideration, for the payment of a specific sum of money, at an appointed time and place; and every holder for value had the right of so regarding and dealing with it. Though payable at particular places, presentment there was not a condition precedent, or necessary to fix the liability of the maker. If he was there in readiness to meet them, or if there he had deposited funds to meet them, a matter of defense might arise, if loss was to ensue from the failure of the holder to make prompt presentment and demand of payment. But, that not being the fact, the failure to demand payment would not lessen his liability.— *Wallace v. McConnell*, 13 Peters, 136; *Irvine v. Withers*, 1 Stew. 234; *Evans v. Gordon*, 8 Porter, 142; *Montgomery v. Elliott*, 6 Ala. 701.

It is not matter of dispute, that the notes were in fact what is known as accommodation paper; a mode adopted for a

loan of credit by the maker to the payees, by which the maker, as to every holder for value, to whom the payees should, in the usual course of business, negotiate the notes, assumed the obligation and relation of a debtor, and the principal and only debtor to the payees, though they were under the duty of protecting him from the payment of the notes, and of indemnifying him, if he was compelled to payment. So long as the notes remained in possession of the payees, they were, of course, wanting in every element of debts. When negotiated in the ordinary course of business, not having been made for any specific purpose, or to be applied to particular uses, but made to aid the payees in the general transaction of their business as factors and commission-merchants, they became precisely what on their face they import—negotiable promissory notes, for the payment of which the maker was bound primarily and unconditionally. The holder, acquiring them, whether before or after they were due, may or not have been informed of their character, and of the relation which, by the separate and extrinsic agreement, not incorporated into, but purposely excluded from the notes, existed between the maker and the payees. If he knew they were accommodation notes, he knew also that they could not answer the purposes of their creation, until negotiated by the payees, and when negotiated, that the maker should stand in the relation, and bear the liability expressed on their face.— *Grant v. Elliott,* 7 Wend. 227 ; *Brown v. Motts,* 7 John. 361.

Nor would the title of the holder be affected, because he may have acquired the paper after its maturity. When accommodation paper is not made for a specific purpose ; when there is, by the understanding of the parties, no restriction upon its use ; there can be no inference, or presumption, that it is to become valueless, or that the authority of the party intrusted with its use ceases, if it is not negotiated before its maturity. Negotiation after maturity may serve the very purpose of its making—in that way only, it may be, the intended loan of credit can be made effectual ; and certainly, putting in circulation accommodation paper, after its maturity, can not be esteemed fraudulent, or *mala fides* attributed to the party who has the right of using it.— *Charles v. Marsden,* 1 Taunt. 224; *Brown v. Mott, supra ; Lincoln v. Stevens,* 7 Metc. 529.

When Connerly consented to make the notes, for the use and benefit of the Weavers, and to intrust them with their negotiation in the transaction of their business as merchants, he placed himself *in the front*, and must abide the consequences. To every holder for value, to whom no fraud can

be imputed, he must be deemed the maker upon a valuable consideration, and liable in that capacity.—2 Amer. Lead. Cases, 242. In no aspect of the case, was evidence admissible in reference to the solvency of the Weavers, and of Connerly's ability to protect himself from loss, if he had been notified of the non-payment of the notes. It was his duty, if he had desired protection, to inquire whether the notes had been negotiated; and if they had not, to have regained possession of them.

The several instructions given on request of the plaintiff, are free from error prejudicial to the appellant. The good faith of the appellee, in the acquisition of the paper, was undisputed; nor was it insisted, the payees were guilty of bad faith in its negotiation. The point of contention was, whether the appellee was a holder for value, protected against the want of consideration as between the maker and the payees. These instructions place the holder in the situation in which he would stand if this were not accommodation paper, made for the purpose of enabling the payees to obtain credit from third persons—as if there had been a valuable consideration intended, which had no existence, or which had failed, or an illegal consideration, or there was fraud infecting the transaction between the maker and the payees. The weight of authority seems in favor of the proposition, that if accommodation paper is taken as a security for a pre-existing debt, or on any other valuable consideration, the holder, acquiring it in good faith, may enforce it, though there was a want of consideration between the original parties.—2 Am. Lead. Cases, 242. Whether the rule could be adopted here, without infringing upon the rule, so long adopted that it can not be departed from without disturbing transactions it may have influenced, that a holder of negotiable paper as collateral security for a pre-existing debt is not a *bona fide* holder for value, protected against equities and defenses existing between prior parties of which he had no notice, we do not consider. This is conceded to the appellant by these instructions, which assert, in other respects, no more than well settled rules of commercial law. All holders of negotiable paper, acquiring it before maturity, in the ordinary course of business, are presumed to have acquired it on a valuable consideration. The rule here prevailing is, that when it is shown there was illegality, want or failure of consideration, or bad faith in giving it circulation, the holder must prove that he acquired it on a valuable consideration, before maturity, or his title can not be protected.—*Ross v. Drinkard*, 34 Ala. 434; 1 Brick. Dig. 276, § 356. And whenever it is shown that the holder acquired it before maturity,

[Tayloe v. Dugger.]

by the payment of money, or giving for it other thing of value; or that he ceded, forbore, or suspended his legal rights, or was induced to change his position for the worse, he is a holder for value, whose title must be protected.—2 Am. Lead. Cases, 223–245. This is the proposition embodied in the instructions; and we repeat, they are free from error prejudicial to the appellant.

It is urged, however, that as there was evidence tending to show that the notes were taken as collateral security for particular debts contracted by the payees, which had been paid, there was a just defense against them, and the instructions are erroneous, because they do not direct, but divert the attention of the jury from this phase of the case. It is obvious this question was not presented to, or considered by the Circuit Court; but the whole defense was limited to the point, whether the appellee was a holder of the notes in good faith, and upon a valuable consideration; and for this reason, it can not now be considered. There was evidence in support of the instructions as given, and evidence in conflict with that, which tended to prove the notes were taken and held as security for particular debts. It was the right of the appellee to request instructions based on that view of the evidence favorable to a recovery; as it was the right of the appellant to request instructions based on that view of the evidence which would have defeated a recovery. Instructions, given on either hypothesis, are not objectionable, because they refer to, and are based on a part of the evidence only. Any injury apprehended from them must be avoided by the request for instructions adapted to each and every hypothesis the evidence tends to establish.

We have examined and considered every cause of error assigned, and can not find that they warrant a reversal.

The judgment is affirmed.